11-0304, People v. Orders. Good morning, Your Honor. Robert Kershawn with the appellate. And can you just spell your last name for me, please? H-I-R-S-C-H-H-O-R-N. Thank you. Good morning, Your Honors. Joseph Alexander, Assistant State's Attorney on behalf of the people of the state of Illinois. All right. Thank you. So I think, Counsel, if you want to reserve a couple of minutes. I'd like to reserve a few minutes for rebuttal, Your Honor. All right. You can proceed. Good morning, Your Honors, and may it please the Court. Again, my name is Robert Kershawn. I'm with the Office of the State Appellate Defender, and I'm here this morning representing the appellant, Otis Williams. As Your Honors are no doubt aware, Mr. Williams was convicted of the gang-related murder of Gregory Sharp. Mr. Williams has, at all times of trial and thereafter, maintained his innocence, and this appeal is about allowing Mr. Williams his day in court to prove his claim that he is innocent. Specifically, given the inherent weaknesses in the state's evidence, the state relied upon three gang members, accomplices by definition in the killing, who exchanged their testimony for leniency. He maintained that he was denied the effective assistance of counsel because his attorney, aware of an alibi, aware of multiple alibi witnesses, failed to fully investigate that alibi, to disclose it, and to present it at trial. He further maintains that he's now in possession of additional information in the form of an affidavit from another individual who is allegedly there, Quan Ray, which will show that those same three accusers, those gang members, committed perjury when they accused him. So again, the issue before Your Honors here, as we see it, is whether, as a matter of pleading, Mr. Williams has put enough out there that he's entitled to an evidentiary hearing to resolve his claims, so he can present to the court the basis for his claims of innocence. How does Quan Ray's affidavit specifically show that the other witnesses were not being totally truthful? Well, according to these witnesses, this was a planned killing. Quan Ray was someone who was known to them. He was there at the planning. He drove one of the getaway cars and things of that nature, and they placed him at the scene. His affidavit says, no, I have an alibi. I wasn't anywhere near that scene. They say I was there. They're committing perjury. Now, when a jury is evaluating the credibility of witnesses, certainly evidence that they are lying, they are lying affirmatively about the presence of someone they know, is a factor that will color the weight that the jury is going to attach to their testimony elsewhere. A jury would be inclined, I would suggest to Your Honor, to look at that evidence and say, you know what, he's lying about that. I don't trust him at all. When we throw into that same hopper here the alibi, it becomes even more compelling. Now, I'm sure Your Honors are familiar with the facts of the case. What I'd like to move to, at least initially, is the post-conviction claim, the claim of ineffective assistance. At the outset, I want to emphasize the procedural posture of this case. We were at Stage 2. This case had initially been summarily dismissed at Stage 1. This court reversed it, sent it back. Counsel was appointed. It proceeded on to Stage 2, and the state moved to dismiss. That's an important factor here because what we're looking at at Stage 2, the rules of Coleman, which tells us that we have to assume as true all the well-pleaded facts in the post-conviction petition that are adequately supported by affidavits or otherwise supported by the record. And here we are supplied, Mr. Williams supplied Trump with three affidavits, the affidavit of Glinda Williams, the affidavit of Gabrielle Williams, and the affidavit of Gail Alexander. According to their affidavits, Glinda Williams actually spoke to trial counsel Chester Blair, told him about the alibi, gave him the details, and Mr. Blair said, okay, be at the courthouse, be there, I'm going to call you. He never called her. The other two witnesses, Alexander and Gabrielle Williams, stated that they tried contacting trial counsel several times. They left messages for him. They told him they wanted to talk to him. He never responded to their contacts. He never called them. He never spoke to them. They weren't at the courthouse. He didn't even investigate their testimony. Well, he knew about them from the defendant. Well, certainly the defendant says, I told him. Right. So it's not that he did not know about them. He didn't talk to them. He didn't talk to them, and when I say he didn't know, he didn't know what they were going to say in detail. I would suggest to your audience, and it's just the nature of the beast when you're preparing for trial. You look your witnesses in the eye. You interview them. You talk to them. You determine what the weaknesses of their testimony is, what the strength is. Particularly when you're talking about an alibi. You've got three witnesses who are all telling this. Do their stories match? Before you can evaluate whether or not you're going to present them. I don't mean to interrupt you, but I'm thinking about the record. Did he file an alibi defense? That's the compounding problem, and that makes the problem even worse, the ineffectiveness even worse. According to the record, he did not disclose the affirmative defense of alibi. So now we're even further into the weeds here on ineffectiveness. Counsel tells Linda Williams, be at the courthouse, I'm going to call you. But he can't. He didn't disclose the alibi. We're left wondering, why didn't he disclose the alibi? And, frankly, that's one of the reasons that we need an evidentiary here. We need to know what was going on. What did he discuss? Who did he discuss it with? What decisions was he making? The state has made. Is Mr. Blair still alive? Your Honor, I have no idea. I knew him years and years ago, and he was old as my dad. That's why I'm just wondering. This came out so long after this trial, I mean, this allegation. Well, actually, it wasn't that long after the trial, Your Honor. The post-conviction petition was filed in 2003. We're still arguing about it in 2013. But the post-conviction petition was actually filed in 2003. The conviction, the events were in 1994. The trial concluded in 1994. The killing occurred in 1994. There was no indictment until 1996. Trial completed and sentence was imposed, I believe, in early 2000. It may have been late 1999 or early 2000. The direct appeal was not resolved until 2002, and the post-conviction petition was filed in a timely fashion in early 2003. So part of the problem is just the sheer length of time that this has been moving up and down without ever getting to an evidentiary hearing. That's what we need. So your defense is not just that he didn't call them, that he didn't disclose the alibi, and he didn't disclose what they would say? He didn't disclose it. He didn't investigate it. He didn't adequately prepare it. And there's no real – I know the State has said there may be strategic reasons. May, may not. We don't know. That's a reason to hold an evidentiary hearing. It's always helpful if you can get an affidavit from the lawyer and find out why he did whatever he did. Yes. There is a presumption of sound trial strategy. I think there is a presumption if it's reasonable, and I want to address that because counsel here pursued a strategy that these were not credible witnesses. There is absolutely nothing inconsistent with putting an alibi on when you say these witnesses are incredible. It provides yet another reason to find them. Except if the alibi witness is, and he did talk to one of them, and they are family members. There's so many cases about using family members as alibi witnesses and how you open up yourself to a jury thinking, oh, if the alibi is lying, then you're guilty. I mean, that's something certainly lawyers look at. Your Honor, certainly in trial court, the inevitable question, you know, you love your son, you love your daughter, et cetera, et cetera. This is the standard way to attack the alibi. But, again, let's remember some context here. The events occurred in 1994. There's no charges until 1996. He's not going to remember some stranger from 1994. He's not arrested until 1996. Almost inevitably, when there is an alibi presented, it's going to be friends and family. Those are the only people you're going to remember. Right. I understand what you're saying. I'm just thinking as a defense lawyer, with the fact that you just said, an offense occurs in 1994. The person's not arrested until two years later. The case goes to trial five or six years later, and family members are going to remember where you were seven or eight years ago.  Well, except that in this case, according to the affidavits, there's a reason that that specific date stood out. A birthday. A birthday party for his eight-year-old nephew. There's a reason that they would remember. There was a family get-together that day, and there was a reason for the get-together. And it covers the time frame that the murder occurred. So it becomes a little more reasonable, and it's one more reason. I have to dispute the argument that just because an alibi may be rejected by a jury, that that somehow strengthens the state's evidence. I mean, we cited Colson in our brief, that any weakness in the defense evidence doesn't necessarily strengthen the state's evidence. If the state's evidence is strong. But we're talking about a lawyer looking at the case, who's cross-examining the state's three witnesses on the matter, who's looking at the strength of their testimony, looking at the jury responding. And, again, there's another point to be made about that, and there's a certain symmetry here in the sense that when you look at how this was argued to the jury at trial, the state recognized that they had witnesses of very questionable veracity. These were gang members. They were flippers. They were offers of leniency. They were proffers and things like that. And it was how all three of them kind of related that made them stronger witnesses. Here we have not one alibi. This isn't Mom coming in and saying, he was with me. There are three alibi witnesses, and they're consistent. It kind of balances in that sense. There's a symmetry there. There's less of a reason when you have three witnesses to assume that they're all going to commit perjury and lie because this is their brother, or this is a relative, or this is a friend. So are you contending that the state was not aware of these witnesses? They weren't disposed. We know that. No, that's not my question. My question is, are you saying that the state was not aware of these witnesses? These alibi witnesses? Yes. To the best of my knowledge, they were unaware of them. What I can say is that they were not disclosed. If you look at the argument on the motion to dismiss here, the trial judge addressed that fact. He said, yeah, it wasn't disclosed, but what trial judges normally do under those circumstances, they'll give the state a continuance so they can investigate it. There would be no reason for a comment about giving a continuance if the state already knew about it. There would be no reason to question why counsel didn't call them, why there was some kind of discovery bar by reason of the failure to disclose if the state knew about it. Why wasn't this argument made on direct appeal? These witnesses did not come forward. They were not part of the record, Your Honor. You mean the defendant's own relatives did not come forward? Not on the record, Your Honor. If I were, wouldn't the defendant know about that? Wouldn't the defendant know about that? Certainly the defendant says he told his attorney about it, but we don't know what his attorney told him in response here. Did his attorney tell him, you're right, I should have called them, I forgot to disclose them? What I can't understand is why it wasn't part of the direct appeal. Why all of a sudden now? Because the affidavits weren't presented. There was no record on which a direct appeal counsel could have argued this issue. The record did not disclose the alibi. The record did not disclose the substance of the alibi. The record did not disclose... Lawyers talk to the defendant, don't they, before they decide what they're going to appeal. What counsel's saying is that it was not a part of the direct appeal. It wasn't something that happened during the course of the trial. It's a collateral. I think the only way this could conceivably have been raised on direct appeal... Is if the defendant had spoken up and said something when he had the opportunity to do so at sentencing to complain about his lawyer not calling his witnesses. I told my lawyer I had all these alibi witnesses. And your Honor... And he didn't do one. And he didn't do a thing. Your Honor is certainly familiar with crankle motions. Certainly I am. Sometimes those things are brought. And that to me, again, is a point that actually supports us because if the crankle motion is filed, there's an evidentiary hearing. Mr. Williams didn't ever get that hearing. Did he ever say anything? That's what I'm asking. Did he say something? When the judge gives him an opportunity to speak or allocute, does he say anything about the ineffectiveness? The state has made the argument in their brief that the judge said no other witnesses are going to be called. We're supposed to read into that that he knew about the alibi. Oh, no, no. I'm saying at sentencing or post-trial, did he ever tell the judge, my lawyer is ineffective, he didn't call my alibi witness. No, Your Honor. It isn't mentioned. No, it is not mentioned to my record. The first time this comes up is in the post-conviction petition. Ultimately, I think, and I want to just address two cases, Tate and King, both cases out of this court because they're, frankly, very closely on point here. Tate was another murder case. There was a post-conviction petition filed supported by, again, three alibi affidavits. And this court had no problem in Tate saying this has got to go to an evidentiary hearing. We're not going to assume that this was trial strategy. We're not going to assume because it was an alibi that he should have spoken up at sentencing or the post-trial motion. None of that is there. They say he presented this, this is an adequate showing to trigger the need for an evidentiary hearing. Tate and Tate were the affidavits from family members. One was clearly a family member. It was his mother. The second one was from someone who was with his mother, whether that was a relative or not, I don't know. The third was a person who was on the phone with, I believe, with the mother at the time. Again, the three affidavits interlocked in the same way that the three affidavits here interlocked. But again, this court had no problem in Tate saying this is enough that we need an evidentiary hearing. We will judge whether or not this was an effectiveness after we put it to the test, after we subject it to cross-examination, after we get the rationale, after all that presentation. We don't decide this is a matter of law based on speculation as to why did something happen. Maybe there was a strategic reason. Finally, I just wanted to address briefly King. King came out from this court shortly after Tate. In fact, it cited Tate. And again, there are some symmetries there. In that case, this court again talked about an alibi, an alibi witness. There was only one witness in that case. And that one came up after an evidentiary hearing. In fact, that one had been sent back twice. This court reversed a summary dismissal at stage one. This court reversed the grant of a state motion to dismiss and sent it back for an evidentiary hearing. And when it came up the third time in the King case that we've cited in the brief, this court overturned the trial court's denial of relief. Because again, when there's an alibi, is there a reason that it wasn't presented? What conceivable strategic reason could there be? In that case, trial counsel, I believe his name was Ginsberg, Mr. Ginsberg was put on the stand and asked, why did you do it? And he said, I can't remember the reason why. I know I did it. I know there was a reason. I can't really recall what the reason was. And this court had no trouble saying, we can't see a reason either and gave him a new trial. Ultimately, in the final analysis here, and I know I've gone a little bit over and I do want to reserve some time for rebuttal, what I want to leave you with is that this court is not being asked right now to say, Otis Williams, here's your new trial. We're not asking you to say that trial counsel was ineffective. What we're asking you to do is look at what's done here, look at what's been presented, and give him his day in court. Give him the opportunity to present his evidence, to have it subjected to cross-examination. Let's find out the reasons, and let's make a judgment based on reason rather than conjecture and speculation. If there are no further questions. Thank you. Thank you very much. Thank you. Mr. Alexander. Good morning, Your Honors. May it please the Court. Assistant State's Attorney Joseph Alexander on behalf of the people of the State of Illinois. Your Honors, this case is actually very simple. This isn't a case about an attorney not investigating. This isn't a case about an attorney not knowing what the alibi is. This is a case about an attorney making a strategic decision, choosing between two defenses, and based on his professional judgment, presenting the defense that he thought was best. The defendant is not entitled to an evidentiary hearing simply because he's unhappy with the result of the trial. If we look at this case again. Let me ask you this. Why would a lawyer not call an alibi witness and set up an alibi if there is one? In this case, Your Honor, the record is absolutely clear as to why defense counsel decided not to pursue an alibi defense. First of all, all of the alibi witnesses were related to the defendant. Secondly, he chose the strategy of attacking the credibility of the State's witnesses. If we look at the State's witnesses, and defense counsel, I will say, did an excellent job on cross-examination in his opening argument, in his closing statement, arguing that the jury shouldn't believe these witnesses because they were all gang members who received deals and were simply trying to pin a case on a low-level gang member in order to save themselves. If we look at this record, even the post-conviction judge who dismissed the petition says that that was a legitimate and orthodox trial strategy. The fact that he decided not to present an alibi defense is, if we look at Strickland, the court says that there are many ways to present a defense. And for him to not present this defense, he simply didn't want to money the lawyers. As this court said earlier, there are dangers with presenting an alibi defense. If the jury doesn't believe your witnesses, they will assume that the defendant is lying and that the State has proved their case. I don't want to interrupt you, but they're also arguing that counsel didn't even bother to investigate, to interrogate, or to interview these alibi witnesses. Did the State know about these witnesses? To my knowledge, Your Honor, the State was not aware of these witnesses. I am not 100% sure about that, but I can, if you want me to answer that question definitively, review the record. We're going to look back at the record because I don't remember, so I'm going to find out.  Defendant admits that he told his attorney of these alibi witnesses. Defendant also admits that one of his alibi witnesses admits that she spoke to counsel about this, was in court ready to testify. So this isn't a case about failing to investigate. Strickland holds that counsel has a duty to conduct an investigation or make the decision, a reasonable decision, that further investigation isn't needed. And in this case, counsel made that decision. He knew of the alibi. If you look at their witnesses' affidavits, they all say the same thing. So counsel knew what the alibi was. Defendant told him he talked to one of the witnesses, he had this witness in court, and he decided not to call her. And that's a reasonable trial decision entitled to great deference under Strickland. There's a presumption that he did not, according to the affidavits, he did not talk to all of the witnesses. But again, he was aware of the witnesses and he was aware of the alibi. That's all that is needed for counsel to make a reasonable decision that this is a defense that he wants to present. And under Strickland, that's a no. If we look at this case, defendant wasn't denied effective assistance. He actually received the type of assistance that's envisioned by the Sixth Amendment. But counsel held a statement to prove in their case. If we look at the record, that's plainly clear. And if we look at the record, his trial strategy was reasonable. And that's what we can't get past. Defendant is saying that, well, these witnesses would have maybe changed the result of the trial and it was ineffective for him not to call them. But it isn't which strategy is better. We have to look at this case without the distorting lens of hindsight as instructed by Strickland and view it under the facts and circumstances known to counsel at the time. All they're asking for here is an evidentiary hearing. Where's the prejudice to allow them to conduct an evidentiary hearing? Again, Your Honor, defendant isn't entitled to an evidentiary hearing under the statute or case law simply because he files a claim saying his attorney was ineffective. At a second stage, he has to make a substantial showing of a violation of a constitutional right. In this case, that violation he's claiming was ineffective assistance of counsel. In order to reach that evidentiary hearing, he has to establish first that his attorney's representation was unreasonable and that he suffered prejudice. We don't even have to get to the prejudice prong because he can show that his attorney was unreasonable. He can't overcome that presumption that counsel rendered effective assistance of counsel. And in this case, it's not even a presumption. It's actually a fact based on the record that defense counsel chose a defense that he thought was better. Again, attacking the credibility of these witnesses based on the fact that they were gang members and the majority of them received deals for their testimony was a legitimate and orthodox trial strategy. You can't, what defendant wants us to do is to throw Strickland out of the window and just give him an evidentiary hearing. Unfortunately, well fortunately for us, the law isn't set up that way. He has to meet his burden. And in this case, he has failed to do that in both his post-conviction petition and his section 214.01 petition because that petition is untimely. It was filed almost eight years after his conviction was affirmed. He has a two-year time period in which to file that petition. He doesn't let... You don't have to argue counsel. Counsel didn't argue it, so... Yeah, untimeliness doesn't apply if a man claims that he's innocent and always claimed innocence. Well, but in this case, Your Honor... Ortez people versus Ortez people. Yeah, I'm aware of people being Ortez, Your Honor, but that doesn't apply here because he's not claiming that he's actually innocent. What he's claiming is that... He's claiming he wasn't there. That means he's claiming he was actually innocent. Your Honor, I want to try to keep this on these facts, but there is a difference between actual innocence and legal innocence. And in this case, what he's saying, the way he framed this issue, is a claim of ineffective assistance of counsel. That's more legal innocence than actual innocence. So if the defendant wanted to argue actual innocence, he could have raised that claim, but he didn't. He raised a claim of ineffective assistance of counsel, and under that he has to meet certain standards, and he failed to do that in this case. All right, so you're telling us in his affidavit he didn't say that he is actually innocent. Your Honor, what I'm saying is the defendant didn't frame the issue that way. He raised a claim of ineffective assistance of counsel. And... Is this defendant a lawyer? He knows all those things? Well, Your Honor, this was a second stage proceeding, and he had an attorney. So if the attorney wanted to argue actual innocence and meet and show that there was newly discovered evidence that was material and non-cumulative and of such a conclusive character that it would change the result on retrial, then that attorney could have done that. Instead, that attorney filed, framed the claim as ineffective assistance, saying that counsel's representation was unreasonable and he suffered prejudice. Those are the factors that Petitioner has to meet in order to get to the third stage. And as I said earlier, he can't even get past the first standard, the first prompt. And for these reasons and those stated in our brief, unless there are any other questions, we ask that you affirm the dismissal of his post-conviction petition and his Section 214-01 petition. Thank you. Thank you. Counsel, you have a couple of minutes. Just a couple of quick points, Your Honor. The State maintains that he did investigate. May I ask, are you claiming actual innocence here or not? I think ultimately actual innocence is the prejudiced crime of Strickland, as you apply it here, Your Honor. If counsel was ineffective for failing to present alibi witnesses who placed him somewhere where he could not have done what the State's only inculpatory witnesses said he was doing, firing the gun, he's actually innocent. Of course, you didn't, or the lawyers didn't put that in his affidavit. No, it wasn't in his affidavit in the sense of, and I'm claiming actual innocence. But the whole thrust of this is I had an alibi. The nature of an alibi, as Your Honor phrased in the question you asked previously, is that I wasn't there, I didn't do it. It's actual innocence. I understand what you're saying, but in our test we gave you a road map how to do it. Why don't people ever follow the road map? Well, one Ortiz came down, I believe, after the amended petition was filed here. Would I prefer that that have been added as a second claim? Obviously, yes. But I think here the question is, did he present enough to entitle him to an evidentiary hearing? Again, counsel is asking you to determine the ultimate question. Was counsel ineffective? I'm saying before you determine whether or not he's ineffective, before we make these assumptions, counsel's claim that this was strategic, he made the judgment call, I'm going to go by attacking them on cross-examination. Let's find out. Let's have an evidentiary hearing. Was that his strategy? How can he explain having Linda Williams there in the courthouse and not filing the disclosure? Was that a strategic decision? Or alternatively, do these facts support an inference that the reason he didn't present the alibi is because he realized he had screwed up in the answer. He had failed to make the required disclosure. Again, ineffectiveness. We don't know what his strategy is. Counsel keeps insisting he had a strategy, as if this is an either-or, that he's going to cross-examine these guys, he's going to push them, he's going to get them to admit to the leniency that they got and all this, and he had to make a decision between one and the other. This isn't an either-or. You can pursue the alibi at the same time that you're presenting the defense that he did present it. There's nothing inconsistent. The alibi enhances the cross-examination attack. It gives the jury more reason to reject the credibility of these witnesses. There is no strategic reason not to do it. And that was your holding in King. We're asking you to apply King here. We're asking you to apply Tate here. We're asking you to follow the road map that this court laid down in 1999 and 2000. That, I think, was the road map that counsel was following here. Unless there are any further questions. Thank you very much. Thank you, counsel. We will take the case under advisement. Are you okay? Yeah. All right.